# Albright et al. *versus* Lafayette Building and Savings Association.

1. As against a bona fide mortgagee without notice, whose mortgage was first recorded, parol evidence is inadmissible to show that a mortgage given by the vendee to a person other than the vendor, at the time the vendee received his conveyance, was intended to secure purchase money.

2. Especially is such evidence inadmissible where the alleged purchase money mortgage covered two separate lots, as to one of which it clearly appeared on the face of the mortgage that it was not given for purchase money, and there was no intimation of a different status as to the other lot.

[Albright *v.* Lafayette, &c. Association.] ·

3. A. agreed to sell a lot to B., take a purchase money mortgage for part of the consideration, and assign it to C. In order to save conveyancing, and by agreement of the parties, B., on receiving his deed from A., executed a mortgage direct to C., for the amount of unpaid purchase money, but not reciting that it was to secure the same. B., within a day or two, executed another mortgage of the same premises to D., which was entered for record on the day of its date. On the same day, but an hour later, C. entered his mortgage for record. Subsequently C. sued out his mortgage and bought in the property at sheriff's sale.

In a subsequent scire facias issued on D.'s mortgage, with notice to C. as terre-tenant, C. offered to prove the above stated facts, for the purpose of showing that his mortgage was a purchase money mortgage, by reason whereof D.'s mortgage was discharged by the said sheriff's sale thereunder.

*Held,* that the court properly excluded the evidence.

4. In some cases, where the relation of vendor and vendee exists, a mortgage which does not appear on its face to be a purchase money mortgage may be shown by parol to be such; and, on the other hand, a mortgage which is stated on its face to be for purchase money may be shown not to be such in fact.

5. A mortgage to secure purchase money, given by the vendee simultaneously with the conveyance of the land, does not necessarily lose that character because taken in the name of a person other than the vendor, by the vendor's procurement.

6. But a mortgage given by the vendee, simultaneously with the conveyance to him, to a stranger, from whom he borrows the consideration money, can never be a purchase money mortgage.

7. Where the articles of association of a corporation, formed under a general Act, contain provisions unauthorized by the Act, such unauthorized provisions and all acts done in pursuance thereof will be invalid, but the title of the corporation, as to all matters authorized by the statute cannot be impeached collaterally therefor.

8. Where the charter of a building association incorporated by the common pleas, since the Act of April 12th 1859, contained in addition to the powers authorized by that Act other powers unauthorized by it and inconsistent therewith, that fact is no evidence, in a collateral proceeding, that the association was not chartered under said Act. The charter will be treated as subject to the Act, and inoperative as to the inconsistent provisions.

9. Powers of a building and loan association under the Act of 1859 considered.

February 26th 1883. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas of *Berks county:* Of January Term 1883, No. 34.

Scire facias sur mortgage, by the Lafayette Building and Savings Association, plaintiffs, against Samuel Albright and Elizabeth Albright, defendants, with notice to E. Jonathan Deininger, terre-tenant. The mortgage in suit, dated April

26th 1876, was given by Samuel Albright and wife to the association plaintiff, of a house and lot No. 217 North Tenth street in the city of Reading, recited to be " the same premises which James T. Reber, assignee for the benefit of creditors of George J. Heilig and Theresa his wife, by deed dated the 26th day of April, 1876, for the consideration therein mentioned, did grant and confirm unto the said Samuel Albright and Elizabeth his wife." Said mortgage was in the usual form of a building association mortgage, reciting a bond for $2,400, conditioned for the payment of a loan of $1,200, and the monthly dues, interest and fines chargeable under the charter and by-laws of the association. The mortgage was acknowledged in due form on the day of its date, and was entered for record on the same day (April 29th 1876) at 2.30 o'clock P. M.

To the scire facias the terre-tenant Deininger pleaded non assumpsit, satisfaction and payment with leave, and a special plea of nul tiel corporation. The terre-tenant died before trial, and his executors were substituted of record.

On the trial, before SASSAMAN, J., the executors of the terre-tenant defended on two grounds, viz :

1. That the mortgage in suit had been discharged by a sheriff's sale in 1879 of the premises under a purchase money mortgage, given by Samuel Albright and wife of the same premises, dated April 26th 1876, and entered for record on the 29th day of April 1876, at 3.40 o'clock P. M. at which sheriff's sale the premises had been purchased by said E. Jonathan Deininger, and a deed-poll was executed by the sheriff to him therefor, Februrry 24th 1879.

2. That the association plaintiff was not a corporation chartered under the general Building and Loan Association Act of April 12th 1859, and, therefore, could in no case recover more than the amount loaned and simple interest thereon.

In support of the first ground of defence the defendants offered to show, substantially, the following facts :

George J. Heilig, being the owner of the premises in question, in 1876, made a general assignment for the benefit of his creditors to one Reber. At this time E. Jonathan Deininger was a judgment creditor of Heilig. Reber, assignee, agreed to sell the premises to Samuel Albright and Elizabeth his wife, part of the consideration to be secured by a purchase money mortgage. It was further agreed between Reber and Deininger that the cash payment and said mortgage should be applied in satisfaction of the latter's judgments against Heilig. An arrangement was made whereby the property should be conveyed by Reber to Deininger, who should convey it to the Albrights, they to execute to him, Deininger, a mortgage thereon for the balance of unpaid purchase money.

[Albright *v.* Lafayette, &c. Association.]

In order to save conveyancing, this arrangement was modified, so that Reber should convey direct to the Albrights, they to execute the mortgage for balance of purchase money direct to Deininger, he satisfying his judgments against Heilig. Deininger in order to obtain full security, demanded, and was allowed security upon another property belonging to the Albrights, and this property was included in the same mortgage. The deed from Reber to the Albrights, the mortgage (covering said two properties) from the Albrights to Deininger, and the satisfaction by Deininger of his judgments against Heilig, were all made on the same day, April 26th, 1876, and the said mortgage was entered for record on April 29th, 1876, at 3:40 o'clock P. M.—seventy minutes after the building association mortgage given by the Albrights was left for record.

Three years later, in 1879, Deininger sued out his mortgage for non-payment of interest, and the property was sold at sheriff's sale and brought in by Deininger. .

The court, upon objection by plaintiff, excluded the defendant's offers to the above effect, saying: "If the true purpose is to prove, that this mortgage to Deininger was a purchase-money mortgage, the elements of proof offered, taken together, would necessarily fail to establish that fact, as the result of the whole proof offered could establish no greater legal effect than the mere change of the form of the security in a loan on the credit of the same property without, however, having become a lien inherent in the real estate itself." (First and second assignments of error.)

To sustain the second ground of defence, viz., that the association plaintiff did not have the rights of a building and loan association under the Act of 1859, the defendants showed that the articles of incorporation approved by decree of the common pleas of Berks county, February 10th 1873, contained certain provisions not authorized by, and inconsistent with the provisions of said Act of 1859.

The defendants presented, inter alia, the following points :—

4. E. Jonathan Deininger, terre-tenant defending, having been a judgment creditor of Heilig, holding a subsisting lien upon said Heilig's property at the time the same was conveyed to Heilig's assignee for the benefit of creditors, and when the latter conveyed the same to the Albrights; and there being no evidence that anything but the conveyance of said property, freed of the lien of Deininger's judgments, to said Albrights, constituted the direct consideration of said mortgage by the Albrights to Deininger; and the dates and execution of the deed to and the mortgage by said Albrights, and of the cancellation of said judgments, being all of the same day, showing that the whole transaction was essentially one single, undivided

transaction,—the said mortgage to Deininger was a purchase money mortgage ; and the property having been sold upon the same, the plaintiff's mortgage was discharged and he can recover nothing from the terre-tenant in this action upon it.

Answer. Refused. (Fifth assignment of error.)

2. This plaintiff, not being a building association incorporated under the Act of April 12th 1859, cannot recover more than the amount actually loaned to the Albrights, with interest thereon at the rate of six per cent. per annum, and cannot recover the stipulated premium of $305. . . nor fines charged.

Answer. Refused. (Third assignment of error.)

The court charged the jury, inter alia, as follows :—

" If the evidence is believed which is presented to you for consideration under the rulings which we felt constrained to make during this trial, then your duty is easy. It will simply be a calculation of the amount ascertained to be due and find a verdict for that amount in favor of the plaintiff, the mortgagee." (Sixth assignment of error.)

Verdict for the plaintiff for $1,009, and judgment thereon. The defendants and the terre-tenants' executors took this writ of error, assigning for error the rejection of their offers of evidence, the refusal of their points, as above, and the portion of the charge above quoted.

*G. A. Endlich*, for the plaintiffs in error.

*Daniel & James N. Ermentrout*, for the defendant in error.

Mr. Justice CLARK delivered the opinion of the court, October 1st 1883.

The first point involved in this controversy is, as to the admissibility of the evidence, offered by the plaintiffs in error, the purpose of which was to establish the Deininger mortgage, as a purchase money mortgage.

The Act of March 28th 1820, § 1, Purd. Dig. 478, pl. 103, which provides that mortgages are to have priority according to the date of their recording, and that no mortgage shall be a lien until the same shall have been recorded, contains a provision as follows :—

Provided, that no mortgage given for the purchase money of the land, so mortgaged, shall be affected by the passage of this act, if the same be recorded within sixty days, from the execution thereof.

It is alleged that the mortgage, from Samuel Albright and Elizabeth his wife, to E. Jonathan Deininger dated April 26th 1876, is a mortgage given for purchase money of the land

mortgaged, and that a sale thereon, of the mortgaged premises, discharged the lien of the prior recorded mortgage, of Lafayette Building and Savings Association ; this is the first question in the cause.

The first and second specifications of error are to the same effect, and are to the refusal of the court to admit the evidence of William P. Bard Esq. who was the attorney of James T. Reber, assignee of George J. Heilig, for creditors, and conducted the transaction between Reber, Deininger and the Albrights.

These offers were, to prove by Bard, " That the conveyance of the property and the giving of the mortgage, were, in point of fact, one and the same transaction ; that the mortgage was given directly in consideration of the land ; that a deed, or agreement, was actually drafted between the parties, to wit : Reber and Deininger, conveying the property to said Deininger, and a deed or agreement conveying the property from Deininger to the Albrights; that in order to save the expense of these multiplied conveyances, by consent of the parties, the conveyance was made directly from Reber to the Albrights, the latter executing their mortgage for the purchase money directly to Deininger ; that the conveyance of the property to the Albrights,—the execution of the mortgage by them to Deininger,—the cancellation of Deininger's judgments against Heilig being subsisting liens upon the property conveyed,—and the recording of the mortgage of the Albrights to Deininger upon the same property, were one simultaneous, undivided transaction; that all the said parties were informed of, and had notice of, and agreed to the above arrangement; that no money passed from Deininger to the Albrights; that the mortgage to Deininger was, in fact, for purchase-money."

Purchase money results, of course, from the contract relation of vendor and vendee; except that relation exist there can be no mortgage for purchase money ; such a security passes from the vendee to the vendor on the footing of the contract of sale.  A purchase money mortgage too, is executed and delivered simultaneously with the conveyance of the land, and there is necessarily unity of time, contract and parties to the transaction ; the execution and delivery of the deed and of the mortgages being cotemporaneous, the law regards them as one transaction, in the same manner as a deed of defeasance forms, with the principal deed, to which it refers, but one contract, although it be by a distinct and separate instrument.

A purchaser of lands, finding a lien of record against his vendor, is bound to inquire into the incipiency of the vendor's title : Gutherie *v*. Watson, 24 Pitts. L. J. 57 ; and a judgment or mortgage creditor of a vendee, finding a lien in the name of

a vendor against the vendee, entered or recorded within the period regulated by law, is bound to take notice of it; he is thereby put upon inquiry, as to the nature, character and consideration of the lien so found; no other notice is required; it is not even necessary that the lien should disclose upon its face the material fact that it is for purchase money, if, in point of fact, whether it be a mortgage or judgment, it was given for purchase money: Parke v. Neeley, 90 Penn. St. 52; Cohen's Appeal, 10 W. N. C. 544.

A purchase-money mortgage, however, may not always be in the name of the vendor, he may assign his right, and the security be taken in the name of the vendor, for use of the assignee, or indeed, it may, under the operation of an assignment, legal or equitable, be taken in the name of another. It can only, however, be in the name of another by the act or deed of the vendor as no other than the vendor, or those representing him, can have title to purchase money as such.

In Campbell's Appeal, 12 Casey 247, Weldon & Tomlinson advanced the money, to pay out the purchase, on a contract with the vendor himself, who made the deed and delivered it to the vendees, under the express agreement, that a mortgage and bond should be made, at the same time, to Weldon & Tomlinson for the purchase money, as such. The mortgage professed, upon its face, to be for the purchase money, and, although given to a third person, was held to be a purchase-money mortgage, and to have precedence of mechanics' liens, entered against the equitable estate.

Lewis, C. J., in delivering the opinion of the court, says:— " The money was not advanced on the credit of the equitable estate at all, but distinctly upon the security of a mortgage upon the legal estate, for the purchase money, under a contract with the vendor himself."

A number of cases might be referred to, from which the general doctrine will appear, that the vendor may take the security in his own name, or in the name of another, under contract or by assignment from him. It will be quite sufficient here, however, to refer to the case of Cohen's Appeal, 10 W. N. C. 544, which is the latest adjudicated case bearing upon this point. In that case, a mortgage was given to secure a loan, made by the mortgagee to the cestuis que trustent of the mortgagor, who subsequently conveyed his interest in the mortgaged premises to his cestuis que trustent by deed reciting the mortgage, and conveying the title, expressly subject to the payment thereof. On the same day the cestuis que trustent confessed a judgment to the mortgagee, expressed to be for the amount of the mortgage, whereupon the mortgagee satisfied the mortgage,

6 Outerbridge.—27

[Albright *v*. Lafayette, &c. Association.]

and it was held that the judgment given to the mortgagee was to be deemed a purchase money incumbrance.

Mr. Justice Green, delivering the opinion of the court, says :—" But we think that the judgment of the bank must be considered as a purchase-money judgment in view of all the circumstances. It is true, it is not so stated on its face, but we do not understand that to be necessary, in any given case, where, in point of fact, the lien, whether it be judgment or mortgage, is given for purchase money. It is also true, that the bank was not the vendor of the property conveyed. But it was a lien creditor of the vendor, by a mortgage antedating the conveyance, and the payment of the lien was a part of the consideration of the conveyance, and so recited therein. If this judgment had been given by the grantees to Sturmer [the vendor], and by him assigned to the bank, it would undoubtedly have been a purchase money judgment. Why, then, should the fact that it is given directly to the bank prevent its being so regarded, when, in point of fact, the money which it secures does constitute a part of the purchase money of the property. By consent of the vendor, the vendees contract directly with the bank, to pay it this part of the consideration of the sale."

On the contrary, however, money borrowed by the vendee to pay for land, becomes the money of the borrower, and he may apply it as he pleases ; it follows, that a mortgage given to secure its repayment would not be a purchase money mortgage, whether the money was so used, or used for any other purpose.

In Nottes's Appeal, 9 Wright 361, Hoover advanced to the vendee the money to pay out the purchase, and the bond he took for the money recited, that it was for purchase money of the land, but the legal title was not conveyed to Trost, the vendee, for the purpose of being mortgaged to Hoover ; between the vendors and him, no treaty whatever occurred ; they assigned and transferred nothing to him, there was no privity between them and him, and upon these grounds it was held, that the money due him was not purchase money within the meaning of the statute.

The cases of Hendrickson's Appeal, 24 Penn. St. 363, and Dungan *v*. American Life Ins. Co., 52 Penn. St. 253, are not in conflict with the principle of the cases cited ; they were both determined on the fact, in each case, that the mortgages, although expressly stated therein to be for purchase money, in point of fact were not.

If therefore the testimony, embraced in the offers, had been received, its undoubted tendency was, to show that, as between the parties to the transaction, the Deininger mortgage was for purchase money of the land ; but there was no evi-

dence already adduced, nor was there any offer to show that the Lafayette Building and Savings Association were affected with any notice, of the real nature of the transaction. The effect of the recording acts is, to make priority between mortgages, generally, depend upon the time of recording, and that general rule must not yield to the merely exceptional case of a purchase-money mortgage, unless there is enough either in the mortgage itself, or elsewhere in the transaction, to evince its true character and operation. The Deininger mortgage not only fails to state that it was given for purchase-money, but, if that was its real character, its recitals are positively misleading. According to the recitals and description, contained in the mortgage, the premises mortgaged consist of two distinct and several lots of ground, one of which is expressly stated to have been conveyed to Albright and wife, by Finton A. Strang and Catharine his wife, by deed dated August 25th 1869; the other, to have been conveyed to said Albrights, by James T. Reber, assignee of George J. Heilig and wife, by deed dated, April 26th 1876. It is not pretended that the mortgage was for the purchase money of the first described piece, it was well known then, and the fact is now admitted, that it was not; nor is there any intimation or suggestion in the mortgage, that it, or the holder of it, stood in any relation to the premises, last described, different from the first. The deed from Reber was receipted in full in the usual form.

That the mortgage to Deininger was delivered by Albright, at the time of receiving his conveyance from Reber, could not affect the Lafayette Building and Savings Association with notice of the secret arrangement with Deininger; nor would it put the association to inquiry; the fair influence under the cir-, cumstances being that the mortgage was given to Deininger to raise money to consummate the purchase, and that the transaction, in fact, was just what, according to the record, it appeared to be. Nor would the circumstance, that Deininger was a judgment creditor of Heilig, change the force of the facts, as, at the most, the inference would be, that Albright had assumed the debt and the money had thus been reinvested as an ordinary loan.

There was nothing therefore apparent in this transaction which was sufficient to put the Building Association upon inquiry. If the lien had been entered by Reber that fact would have been sufficient; the title came from him, and whatever put the association upon inquiry was equivalent to notice. Inquiry of Reber must either have resulted in knowledge of the fact or an estoppel of Reber from after asserting it, and in, either case, the association would be protected from injury.

It is true, as held in Parke v. Neeley, 90 Penn. St. 52 ; Cohen's

[Albright *v.* Lafayette, &c. Association.]

Appeal, 10 W. N. C. 544, and other cases, that it is not necessary that the lien should upon its face disclose its true character, but in no case has it ever been held, that notice or its equivalent must not somewhere be found. In Campbell's Appeal, 12 Casey 247 the fact was published on the face of the lien; in Cohen's Appeal, supra, it was found in the manifest features of the transation itself, and indeed in the actual knowledge of the parties interested, as stated in the opinion of the court.

The second point in this contention is that the Lafayette Building and Savings Association is not an association under the Act of April 12th 1859 and is, therefore, only entitled to recover the amount actually advanced with interest.

In the case of Rhoads *v.* Hoernerstown Building and Savings Association, 82 Penn. St. 187, it was distinctly held that the Act of April 22nd 1850, was repealed by the Act of April 12th 1859. The repeal was not expressed in the words of the statute, it was by implication. The Act of 1850, which was local, was fully supplied by that of 1859, which was general, and a complete revision of the law on the subject. The Act of 1859 not only defined the powers and peculiar privileges of building and savings associations, incorporated under its provisions, but it promoted associations, formed under previous statutes, to the exercise of the same powers and privileges; thus establishing a uniform, consistent and general law, for the observance of all. This was practically the first encouragement, which the scheme for establishing associations of this character received from the state; all previous legislation had been merely local, the courts were severe in their strictures upon it, the receipt of premiums and fines was held to be usurious, and the recovery of the sum loaned only, with interest upon it, allowed; all in excess of this was held to be usury. The Act of 1859, however, after putting all upon the same footing, provided that thereafter, " no premiums, fines or interest on such premiums, that may accrue to the said corporations, according to the provisions of this Act, shall be deemed usurious."

If, therefore, the Act of 22d April, 1850, was repealed by the Act of 1859, and, at the time of the incorporation of the Lafayette Building and Savings Association, there was no other statute but that of 1859, under which the court of common pleas of Berks county could have any authority to grant the charter of a building association, this affords the strongest evidence that the court intended to grant the charter under that Act. The announcement of the decision of this court, in the case of Rhoads *v.* Hoernerstown Building Association, supra; although subsequent to the granting of this charter, was not the introduction of any new principle, but was simply the application of an old and familiar rule of construction, to the Act of

[Albright v. Lafayette, &c. Association.]

1859, which declared its meaning and effect from the date of its passage. The presumption is that the court, in the granting of this charter, was neither ignorant of the rule, nor incapable of applying it. This presumption is greatly strengthened by a reference to the proceedings, under which the charter was granted. The first section of the Act of 1859 provides, that the application for a charter shall be made to a court of common pleas of the proper county, in the manner and at such times and, as prescribed by the 13th section of the Act of 13th October 1840, and, the 13th, 14th and 15th sections, of that Act, were extended to and made part of the Act of 1859, with regard to such associations. Referring to these sections of the Act of 1840, and to the proceedings to obtain this charter, it will be found, that the latter closely pursued the provisions and requirements of the former. The application was in almost the precise language of the Act, and " specified the objects, articles conditions and name, style and title under which they associated." What the court intended to do would probably best appear from what the court actually did, but the several orders and decrees of the court are not given in the testimony ; we assume, therefore, that nothing appears in the orders and decrees entered, inconsistent with proceedings under the Act of 1859, or those sections of the Act of 1840 which are part thereof.

It is argued, however, with great ingenuity, upon the part of the plaintiffs in error, that some of the essential and material parts of the charter are inconsistent with the provisions of the Act of 1859, and that although the validity of the charter cannot be collaterally questioned here, these inconsistencies are so apparent, that we must therefore conclude, this charter whatever it may be, or whatever powers it may confer, is not a charter under the Act of 1859, and was not so intended. It is an abundant answer to this contention, that this association is unquestionably and essentially a building association, not only in name but in nature. Although some of the powers conferred are inconsistent with the Act of 1859, the acceptance of the charter is necessarily subject to its provisions ; thus these inconsistencies are rendered inoperative. If the court exceeded its power, for this excess the charter is ineffective.

The objects and purposes of the association, as set forth in the charter, are not, we think, in any respect different, from the objects and purposes of associations, expressly organized under the Act of 1859, as defined by that Act. The purpose of a building association as thus defined is to afford the indigent an opportunity to save and profitably invest savings, induce habits of economy, etc., and further to enable them thereby to purchase and build houses, increasing the number of small real estate owners, etc.

The legitimate object of these associations is, therefore, by investment of savings, to enable, not to oblige, indigent persons to purchase and own their own houses.    They cannot compel such an investment, they can simply put it in the power of their members to have homes.    A suitable home is often beyond the reach of a poor man, he would most willingly invest his labor in the purchase of one, but his labor is not ordinarily available for that purpose.    The aim of the association is, therefore, to bring a home within his reach, and to enable him, under its peculiar policy and management, by his own effort, to pay for it.

The funds accumulated are loaned or advanced to the members only, to be repaid in monthly savings ; if, however, a member chooses to be an investor simply, an owner of shares of the capital stock, " investing his savings in stock payments, with a view, at the winding up, to make a profit on his savings, no one can dispute his right so to do, for, as we have seen, the object of the law is two-fold, to afford an opportunity to invest savings, and to enable the purchase of real estate.    The member may avail himself of one or both of these purposes of the law. At the winding up, the investor receives the paid-up value of his stock, and may ' invest the same as it may be deemed, by him, most profitable ;' this is the practical operation, as well as the avowed purpose of the law. "    We cannot see how it could impair a charter, under the Act of 1859, to write in the body of it, as its avowed object and aim, that which the actual operation of that statute effects, viz.:—" The accumulation of a fund, by the savings of the members thereof, sufficient to enable every stockholder to invest his savings safely and speedily, and to purchase real estate, or to invest the same as it may be deemed by him most profitable."

In the case of the Juniata Building and Loan Association *v.* Mixell et ux., 84 Penn. St. 313, we have held, that there is nothing, either in the letter or the spirit of the Act of 1859, that makes it the duty of the association, to inquire for what purpose loans are being obtained, or to require any stipulations from the borrower, as to the use he shall make of the money, or in any manner to supervise or control its disbursement.

In Workingmen's Building Association *v.* Coleman, 89 Penn. St. 428, it was held, that where the leading features of the charter correspond with the provisions of the Act of 1859, and, so far as appears, the association was organized and its business conducted, in accordance therewith, it can not be doubted, that the application for the charter, and the action of the court thereon, were intended to be under that Act, although the application was signed by nine persons, only ; and that this defect was cured by Act of May 11th 1874, P. L. 133.

[Albright v. Lafayette, &c. Association.]

The case of Becket v. Uniontown Building and Loan Association, 88 Penn. St. 211, had some of the peculiarities of this case, and we quote from the very able opinion of the learned Judge Stowe, which was affirmed here as follows :—" The validity of the charter of plaintiff cannot be questioned in this proceeding. That the court intended to grant the charter, under, and in accordance with, the provisions of the Act of 12th April, 1859, I think sufficiently appears, not only from the fact, that the association in the order of the court is termed a building and loan association, but also from the general provisions contained in the articles. It is true that the charter contains a provision not authorized by this Act, but throwing that aside, I find nothing absolutely inconsistent or in conflict with it.

" No term is fixed for the duration of the association, but this alone amounts to nothing, as the law limits its duration to twenty years, and therefore it cannot exist beyond that period.

" If, under article 9, the charter was terminated before that period, as it might possibly be, the end has come, consistent with the Act. If that article does not terminate it before, the law steps in and ends the corporate existence at that time, and there is nothing in the charter indicating a contrary intent.

" The provision, that under certain circumstances, money may be loaned to others, than members, is certainly not within the provisions or powers of the Act of 1859, and therefore, as against such, the association could not recover more than six per cent. interest; but this certainly does not affect the right to recover more as against a member.

" I think the law to be clear, that in corporations formed under the general laws, it is no objection that the articles of association contain provisions not authorized by the act. If unauthorized provisions are added, all acts done in pursuance of such, will be void; but until the corporation is proceeded against for an abuse of its franchises, its rights as a corporation will not be affected by such unauthorized powers. Such too has been expressly stated in New York, in Eastern Plankroad Co. v. Vaughan, 14 N. Y. 546. The case of Rhoads v. Hoernerstown Building and Loan Association, 1 Norris 180, does not seem to me to cover this case. Whatever else appears in that case, the controlling idea was, that the court that granted the charter then, could not and did not intend to charter it under the Act of 1859, because it had no authority under the petition to do so, and further, because the provisions of the charter were such as also to rebut any such intention.

" Here the jurisdiction of the court under the Act of 1859 was clear, and I find nothing to the contrary indicated by anything in the charter, and much that leads me to the conviction that the purpose of the court was to incorporate an association

[Albright *v*. Lafayette, &c. Association.]

under the Act of 1859, having all the powers of what are ordinarily termed building and loan associations incorporated under that Act."

In Stiles's Appeal, 95 Penn. St. 122, there was a minimum premium fixed by the building association, below which, loans could not be made, as in the present case ; such a provision was clearly in conflict with the Act of 1859 and was so declared. Yet, assuming that its charter was under that Act, it was held, that the association had a right to loan to its members, according to the provisions of the Acts.   It was further held, to be a gross perversion of the spirit and design of such an association to fix a minimum premium, as it was the right of the member under the Act of 1859 to obtain the money at the least price he could, by bidding at a regular meeting, and that when a member was obliged .to take at a minimum rate, he could defend on that ground, when payment was required.   This defence is, of course, limited to the person who in any particular case is affected or injured by the illegal provision in the charter, or by-law.   If a purchase of a loan is made upon competition in bidding, beyond the minimum premium fixed, the purchaser cannot complain of the fixed premium, as his purchase was made in accordance with the law ; but where he is obliged to take the loan at the minimum fixed premium, because of the rule of the . association simply, and in the absence of competitive bidding, he may complain, and defend on that ground.   The same principle will, of course, apply in the repayment of a loan, when the rule for settlement under the charter or by-laws, differs, in any respect, from that fixed by law.   Whilst building and loan associations are entitled to all the privileges, powers and immunities allowed by law, they must be held to contract in conformity therewith.

We are of opinion, therefore, that not only the court but the incorporators intended the charter of the Lafayette Building and Savings Association to be under the general law of 1859, and its acceptance being necessarily subject to the provisions of that act the clauses of the charter inconsistent therewith are inoperative and void.

It follows, therefore, that the court below in the determination of this case was right in results, if not in the reasons assigned for them, and therefore the judgment is affirmed.