The Commonwealth Title Insurance and Trust Company, Trustee for Susan C. Lex and Mary C. Neilson, Assignee of the Commonwealth Title Insurance and Trust Company, *v.* Amos Ellis. Appeal of H. Victoria Ellis.

*Mortgage—Purchase money mortgage.*

It is not necessary that a lien should disclose on its face that it is for purchase money, if in point of fact, whether it be a mortgage or judgment, it was given for purchase money.

Where the delivery of a deed to a mortgagor and of a mortgage to a mortgagee are concurrent and simultaneous acts, and the money for which the mortgage was given was in actual fact a part of the purchase money paid for the property at the very time of the delivery of the deed, the mortgage is a purchase money mortgage, although there may be nothing on its face to disclose that fact.

*Mechanic's lien—Covenant against liens—Contract—Repugnant clauses.*

A positive prohibition in a building contract against the filing of liens against any person will prevail, although another clause in the contract authorizes the owner to require of the contractor sufficient evidence that the premises are free of all liens before payment may be demanded, and to retain an amount sufficient to indemnify him against such liens.

A building contract contained this clause: "It is hereby further agreed that there shall be no liens entered or filed by any subcontractors, or any other persons, for or on account of any work, labor or materials, done or supplied in or upon said building." *Held*, that the prohibition applied to the principal contractor.

*Contracts—Repugnant clauses—Printed and written matter.*

Where the written and printed portions of a contract are repugnant to each other, the printed form must yield to the deliberate written expression.

Argued March 29, 1899.   Appeal, No. 87, Jan. T., 1899, by H. Victoria Ellis, from order of C. P. No. 2, Phila. Co., Dec. T., 1893, No. 595, dismissing exceptions to auditor's report.   Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to auditor's report.

The facts appear by the opinion of SULTZBERGER, J., which was as follows :

When this case was before us on the first report of the auditor, the facts did not in all respects tally with those found in his second report, and some of the questions arising on the exceptions to the latter are, therefore, new.   As the matter stands now, it appears that on March 21, 1892, Amos Ellis acquired an equitable estate in the premises in question by an agreement of sale between him and the owner, DuPont.   On December 22, 1892, he made a contract with Amweg, the builder, to erect a house and stable on the lot, which contract contained the provision that Amweg would, " as speedily as possible, and without any delay, fully complete the work herein contracted for." On February 11, 1893, Amweg staked out the location of the building and began to put up outhouses needed in connection with the work.   On February 15, 1893, he commenced the actual excavation.   On March 1, 1893, Amos Ellis took the legal title by deed dated January 31, 1893, and contemporaneously delivered a bond and mortgage to the Commonwealth Title Insurance and Trust Company, dated February 27, 1893, for $10,000, that sum being needed and used as part of the purchase money of the property.   On the same day both deed and mortgage were recorded.   The auditor has found that about a week after work was begun, Miss DuPont, the owner, learned of it, and insisted on its being stopped ; that Amweg was notified, and promised to cease immediately, and concludes that the work was a continuing trespass until after the settlement of March 1.   He also found that " it has not appeared that there was an intention on the part of the vendor, or even on that of

the mortgagee, that any part of the vendor's lien for purchase money should be kept alive by the mortgage." His conclusions of law were : First, that the mortgage had precedence, because all the work done prior to March 1 was a continuing trespass ; second, that Amweg has no right to a lien, because of noncompliance with the conditions precedent, and the auditor distributed the fund in court in payment of the mortgage in full, and the balance ratably among the subcontractors.

Exceptions were filed on behalf of H. Victoria Ellis, as owner, Amos Ellis having, on April 3, 1893, conveyed the premises to her; on the part of Amweg, the builder, because of the rejection of his claim; and on the part of the architect and subcontractors because of the award to the mortgagees. Three questions arise on these exceptions: 1. Had the lien of the mortgage precedence over the claims of the contractor, architect and subcontractors ? 2. Had the contractor a right of lien ? 3. Had the subcontractors a right of lien ?

As to the mortgagee's right: The auditor appeared to be of the opinion that though the mortgage in this case was given for the purpose of paying the amount received therefor on account of the land, which amount was actually paid at the moment of the delivery of the deeds of conveyance and mortgage, yet, because certain formal words had not been used ascribing a specific intention to an act which was in itself the most powerful evidence of that intention, the mortgage could not be classed among purchase money mortgages ; and it was strenuously urged, upon the argument, that no mortgage can be a purchase money mortgage unless it be made to the vendor, and that it cannot be in the name of another unless by the act or deed of the vendor, as no other than the vendor or those representing him can have title to purchase money as such. As early as 1812 the Supreme Court of the state of New York, in the case of Jackson v. Austin, 15 Johnson, 477, held that where the purchaser gave at the same time with the deed a mortgage to secure the purchase money, although to another than the vendor, the mortgagee was entitled to his lien for a purchase money mortgage. The court held that under the statute which declared that whenever lands are sold and conveyed and a mortgage is given by the purchaser at the same time to secure the payment of the purchase money, such mortgage shall be

preferred to any previous judgment which may have been obtained against any such purchaser, that a mortgage of the kind described came within the letter of the act. They pointed out that the act probably contemplated cases where the mortgage was given to the seller of the land; but they held that the words of the act not being restricted to such cases, a just and fair construction warrants its application to the present case. An examination of our Pennsylvania statute of March 28, 1820, P. L. 141, sec. 1, entitled "An act relative to mortgages," shows that the statute made no such distinction as was in the mind of the auditor. The words are: " Provided that no mortgage given for the purchase money of the land so mortgaged shall be affected by the passage of this act, if the same be recorded within sixty days from the execution thereof." The test is not whether the mortgage for the purchase money is given to the vendor, but whether it is to be used as purchase money. The circumstances of this case are such as to leave no doubt whatever upon the subject. The purchaser had paid $500 to bind the bargain. The vendor would not deliver the deed until $10,000 more was paid on account of the balance of purchase money. Deeds of conveyance and mortgage were prepared. The parties got together on March 1, 1893, and the $10,000 of the mortgagee were physically handed over to the vendor, in consideration of which the deed of conveyance was delivered to the mortgagor and the deed of mortgage to the mortgagee. The whole constituted one act, indivisible in fact, and only capable of being split into several by logical subtlety. Any one examining the record to ascertain the owner's title was confronted with the obvious facts. The law still remains as it was laid down by the Supreme Court in Cohen's Appeal, 10 W. N. C. 544, decided in 1881. Mr. Justice GREEN, delivering the opinion of the Court, said that a judgment may be considered as a purchase money judgment, even if not so stated on its face, such statement being unnecessary where in point of fact the lien, whether it be judgment or mortgage, is given for purchase money. On the argument, it was contended that a different principle had been established in the case of Albright v. The Association, 102 Pa. 411. Nothing can be further from the truth. Mr. Justice CLARK, in his opinion, distinctly affirms the decision in Cohen's Appeal, in

the following language: " It is not even necessary that the lien should disclose upon its face the material fact that it is for purchase money, if, in point of fact, whether it be a mortgage or judgment, it was given for purchase money: " Parke v. Neeley, 90 Pa. 52; Cohen's Appeal, 10 W. N. C. 544. We approve the finding of the learned auditor, that the contractor's entry on the land prior to the delivery of the deed by the vendor was a trespass. Mere articles of agreement do not entitle a purchaser to take possession of land until he complies with their terms. Such compliance did not take place in this case until March 1, 1893. Inasmuch as the lien of the purchase money mortgage attached at the moment of the delivery of the deed, it was impossible for the contractor's lien to take precedence of the mortgage. The learned auditor was right in awarding to the mortgagees the full amount of their mortgage and interest.

As to the contractor's right: We come, next, to the question of the contractor's right of lien. This was contested by the architect Fielding, by the subcontractors, and by H. Victoria Ellis, the mother of the defendant, who was his successor in the title. For reasons assigned in our previous opinion, we are of opinion that the waiver in the tenth clause is not intended to bind the principal contractor. The subcontractors, as will presently be shown, have no standing to contest; and, therefore, the only persons remaining in opposition are Fielding, the architect, and Mrs. Ellis. Fielding's claim, however, is like Amweg's—that of a contractor with the owner, and stands on the same footing. We are, therefore, remitted to the plain question, whether H. Victoria Ellis, who stands in the shoes of her son, Amos Ellis, shall be allowed to overthrow the contractors' liens. Her rights are precisely the same as those of Amos Ellis, and rise no higher. We have no doubt that, as between Amos Ellis and his contractor, the latter had a right to file a lien for the amount of work he had done, and thus protect himself as far as possible against loss by the admitted insolvency of the owner, and his consequent inability to bring the work to a conclusion, and Amos Ellis ought not to be allowed to put into his pocket the proceeds of the material and labor furnished by the contractor. He is estopped from setting up the contractor's trespass, because it must be equally imputed to him, and because, in any event, the permission by Ellis to the contractor to go on with

the work after possession of the land was obtained on March 1, 1893, was a ratification by Ellis of all that had been done before. As against H. Victoria Ellis, therefore, the contractor, Amweg, and the architect, Fielding, are entitled to recover pro rata. We are, therefore, of the opinion that the learned auditor erred in overruling the contractor's claim.

As to the subcontractors' right: In our opinion on the first report we instructed the learned auditor that the subcontractors had a right of lien, and he properly followed the ruling. After the proceedings before the auditor were closed, the Supreme Court, in the case of Morris v. Ross, 184 Pa. 241, held that "a contract for the erection of a building, which provides that 'no lien shall be filed against the building by either the contractor or subcontractor,' and in a subsequent paragraph further provides that the contractor shall give the architect, if required, good and sufficient evidence that the premises are free from all liens and claims chargeable to the contractor, and that the owner shall have the right to retain out of any payment due an amount sufficient to indemnify him against such lien or claim, is prohibitive of the right of the subcontractor to enforce a lien for materials furnished against the premises." This case is in point, and practically reverses our decision on the auditor's first report. The claims of the subcontractors must, therefore, be disallowed.

The exceptions of H. Victoria Ellis and of the subcontractors are dismissed. The first exception of Mantle Fielding is sustained; the others are dismissed. The exceptions of the plaintiff are dismissed.

And now, December 24, 1898, the report is referred back to the auditor to make distribution in accordance with this opinion.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Franklin Swayne,* for appellant.—In a contract the written clauses are to be considered as more strictly expressing the intentions of the parties to the instrument: Grandin v. Ins Co., 107 Pa. 26; Morris v. Ross, 184 Pa. 241.

No one had a right to file a lien: Schroeder v. Galland, 134 Pa. 277; Waters v. Wolf, 162 Pa. 153; Morris v. Ross, 184 Pa. 241.

*Sheldon Potter* and *William H. Staake*, for appellee.

OPINION BY MR. JUSTICE GREEN, July 19, 1899:

We agree entirely with the learned court below in holding that the mortgage of the plaintiff in this case was a purchase money mortgage, under the evidence, and was entitled to priority in the distribution. The delivery of the deed to the mortgagor and of the mortgage to the mortgagee were concurrent and simultaneous acts, and the money for which the mortgage was given was in actual fact a part of the purchase money paid for the property, at the very time of the delivery of the deed. In both the cases, Cohen's Appeal, 10 W. N. C. 544, and Albright v. The Association, 102 Pa. 411, this Court held that it was not necessary that the lien should disclose on its face that it is for purchase money if in point of fact, whether it be a mortgage or judgment, it was given for purchase money. We agree with the auditor in holding that the positive prohibition contained in the tenth clause of the building contract against the filing of any liens by any subcontractors, or any other persons, excluded the claimants who were subcontractors from filing any liens, notwithstanding the provisions contained in the third clause. The learned court below having held otherwise, and reversed the auditor on this subject, subsequently, in the second opinion filed, changed its ruling on account of the decision of this Court in Morris v. Ross, 184 Pa. 241, and sustained the action of the auditor in rejecting the claims of the subcontractors. The decision of the court in the first opinion was based upon the theory that the provisions of the third section of the contract contemplated the filing of liens and their release before payments could be required, and hence sanctioned the filing of liens, and as there was an absolute repugnance between the 3d section and the 10th in this respect, it could not be held that the right to file liens under the 3d section could be intended to be taken away by the 10th. But in the case last cited we had the precise question before us, and we decided that the positive provision prohibiting all liens must prevail, and that the provision authorizing the owner to require of the contractor sufficient evidence that the premises were free of all liens before payments could be demanded, and to retain an amount sufficient to indemnify him against such liens,

was not repugnant to the prohibitory clause, but only a protection against possible liens which might be filed without regard to the contract. In the present case the tenth clause of the contract is in the following words : " It is hereby further agreed that there shall be no liens entered or filed by any subcontractors, or any other persons, for or on account of any work, labor or materials, done or supplied in or upon said building." That these words are a prohibition against any liens is established by all our decisions from Schroeder v. Galland to this time. The learned court below held that they excluded subcontractors, but, for reasons set forth in the opinion they did not exclude the principal contractor. We are not able to agree to this conclusion. It seems clear to us that the words " or any other persons " include all other persons, and necessarily include the principal contractor, as the words are generic and necessarily include all persons who have a right to file liens. Moreover we think it quite plain that the words of the 3d section are consistent with the theory of a mere protection against possible liens, and are therefore not repugnant to the positive prohibition contained in the tenth clause. All this we held in Morris v. Ross, supra. But if this is so, the principal contractor has no more right to file a lien than any subcontractor. The 10th section is in words that are written, as contradistinguished from the other words of the contract which are printed words in a printed blank, and the 10th section is the last utterance of the contract on this subject, and if there were repugnance between the 3d and 10th sections, the 10th would prevail. In Grandin v. Insurance Co., 107 Pa. 26, in construing a policy of insurance we said : " This clause of the policy is in writing, and must be taken to be what the parties intended. The condition is the printed portion. The settled rule of law is that where the written and printed portions are repugnant to each other, the printed form must yield to the deliberate written expression." We are therefore of opinion that the learned court below was in error in awarding any part of the fund to the lien of the contractor.

The decree of the court below is reversed at the cost of the appellee, and the record is remitted with instructions to distribute the fund in accordance with this opinion.