## Nicholson *v.* Ertel, Appellant.

*Real estate—Sales—Contract of sale—Construction—Restriction of remedies—Defect in title—Abatement in price—Specific performance—Equity.*

Where a contract for the sale and purchase of certain lots at a sum fixed, provides that in case the title should be defective in any manner, the vendors would take all necessary steps to have the defect remedied, and should they not be able to do so within a reasonable time, the purchaser should have the option of taking the title as it was, or having the money paid on account refunded, and the vendors notify the vendee of their inability to remove certain restrictions from the property, the failure of the vendee within a reasonable time thereafter to exercise his right to take the property subject to the restriction and make payment therefor at the stipulated price within the contract time, voids all his rights under the contract save the right to have the money paid on account refunded, and such vendee is not entitled to maintain a bill for specific performance with abatement in price for the defect in title.

Argued Jan. 23, 1911.   Appeal, No. 288, Jan. T., 1910, by Harry F. Ertel, from decree of C. P. No. 4, Phila. Co.,

Dec. T., 1909, No. 4,939, on bill in equity in case of Elizabeth Van Hoesen Nicholson, executrix, etc., et al. v. Harry F. Ertel, Felix Isman and William S. Vare, recorder of deeds for Philadelphia county. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for the cancellation and surrender of an agreement of sale of real estate. Before AUDENDRIED, J.

The facts as stated by the Supreme Court were as follows:

The contract out of which this dispute arises was for the sale and purchase of certain real estate in the city of Philadelphia entered into October 9, 1909. The purchase price was $80,000. Of this sum $3,000 was paid as hand money; $12,000 was to be paid on the execution and delivery of the deed, and the remaining $60,000 was to be secured by mortgage on the premises and was payable within five years. Settlement was to be made within sixty days from the date of the contract, and time was to be considered as of the essence of the contract. The special stipulation in the contract which here calls for consideration is as follows: "Title to be good and marketable, and such as would be insured by a title company acceptable to the purchaser at the regular fixed charges, and to be clear of all incumbrances, claims, liens, restrictions, easements, demands and charges whatsoever. Should the title be defective in any manner the vendor will take all necessary steps to have such defect remedied, and should vendor not be able to do so within a reasonable time then the purchaser shall have the option of taking the title as it is or having the money paid on account refunded; except that the property is sold and purchased subject to the existing leases." Soon after the execution of the contract the vendors discovered that the property was subject to certain building restrictions imposed for the benefit of the adjoining lots owned by others. The vendors had no knowledge of the existence of these re-

strictions when the contract of sale was entered into. On October 18 following, they notified the agent of the vendee that the property was subject to certain restrictions, and subsequently on the 28th like notice was served on the vendee personally, and he was asked whether he desired to accept the property subject to the restrictions at the stipulated price or desired to abandon his purchase and receive back the money he had paid. To this inquiry the vendee made no reply. Between the dates of these notices vendors applied to the owners of the adjoining lots for a release of the restrictions. The owner of one of the lots positively refused to release on any terms whatever. Since the restrictions were for the benefit of both the adjoining lots, concurrence by all parties in interest was necessary to effect an acquittance of the servient property, and the unqualified refusal of one defeated the vendors' effort to this end. On December 15, vendors notified the vendee in writing of their inability to secure the release of the restriction, and again informed him that he might either take the property subject to the restrictions at the contract price, or have the money he had paid refunded. A check for that sum was accordingly sent him. The notice contained a request that he satisfy of record the contract of sale which on November 6 he had caused to be recorded in the office for the recording of deeds in Philadelphia county. The check sent to the vendee was retained by him, but not presented for payment. On February 8, 1910, vendors filed their bill setting forth the facts as above stated and claiming that the agreement of sale so recorded was a cloud upon their title which the defendants had no right in law or equity to create or maintain, and praying that the defendants be required to cancel and surrender the agreement, and that the recorder of deeds be required to mark the record of the same "canceled of record." The answer of defendants, while not admitting, did not deny any of the material averments in the bill, but insisted on the defendants' right notwithstanding to retain the agreement of sale, and the right

to keep and maintain the same as a recorded instrument for their own protection, inasmuch as the default thereunder was the plaintiffs' own default, in failing to convey such title as was required under the agreement. The answer further averred that defendants had been at all times and still were ready and willing, as the plaintiffs had been fully informed, to settle for said property according to the terms of the agreement, even subject to the restrictions which qualified the plaintiffs' title, with an abatement from the purchase money of such amount as the court might consider would fairly compensate for such defective title. At the same time defendants filed a cross bill asking that the vendors be required to convey the property in question with such an abatement from the purchase price as would compensate for the incumbrances in the title. The answer denied 'the defendants' right to specific performance of the contract. Issue being joined, the case was heard, with the result that the cross bill was dismissed, and a decree entered requiring the surrender and cancellation of the original contract ·and the return of the money paid. In addition to the facts stated above, the court found, (1) that the depreciation in the market value of the property in consequence of the building restrictions was one-sixth the price the vendee had agreed to pay for an unincumbered title; (2) that the vendors had done all it was incumbent upon them to do under the agreement in the effort to convey an unincumbered title; (3) that the period between December 15, 1909, and the date when the vendors notified the vendee of their inability to secure the release of the restriction, and February. 8, 1910, the date of filing of plaintiffs' bill, was more than a reasonable time for the vendee to accept vendors' title to the property subject to the restriction at the contract price. A decree followed dismissing the defendants' cross bill, and directing the surrender and cancellation of the written agreement upon payment of the $3,000 check. From that decree the defendants appealed.

*Error assigned* was decree of court.

*Morris Wolf*, with him *Horace Stern*, for appellants.—
Appellants have the right to demand a conveyance of
the title with deduction for the restrictions: Erwin v.
Meyers, 46 Pa. 96; Barnes's App., 46 Pa. 350; Napier v.
Darlington, 70 Pa. 64; Burk's App., 75 Pa. 141; Latta
v. Hax, 219 Pa. 483; Hamory v. Sargent, 25 Pa. C. C.
Rep. 191.

The wording of the contract did not limit the right of
the vendee to the avoiding of the contract: Gillis v. Hall,
7 Phila. 422; Hunt v. Smith, 139 Ill. 296 (28 N. E. Repr.
809); Leatherman v. Oliver, 151 Pa. 646; Mathews v.
Peoples' Nat. Gas Co., 179 Pa. 165; Cape May Real
Estate Co. v. Henderson, 42 Pa. Superior Ct. 1.

*John G. Johnson*, with him *James Wilson Bayard*, for
appellees.—Whether specific performance of a contract
for the sale of land will be decreed depends upon all the
circumstances of the case: Henderson v. Hays, 2 Watts,
148.

Ordinarily time is not of the essence of the contract,
but it has been uniformly held in this state ever since
the case of Gable v. Hain, 1 P. & W. 264, that parties may
make the time of performance of the essence of the con-
tract, and that, where they have done so, equity will not
relieve from the effects of nonperformance at the time
stipulated, and specific performance may not be enforced
in favor of the defaulting party.

OPINION BY MR. JUSTICE STEWART, March 20, 1911:

This was a contract for the sale and purchase of certain
lots in the city of Philadelphia. It provided that in case
the title should be defective in any manner the vendors
would take all necessary steps to have the defect remedied,
and should they not be able to do so within a reasonable
time, the purchaser should have the option of taking the
title as it is, or having the money paid on account refunded.

The title being found subject to certain restrictions which the vendors were unable to remove, they filed their bill for a cancellation of the contract. The vendee filed a cross bill for specific performance with abatement in price for the defect in the title. A full recital of the facts appears elsewhere. The learned chancellor thus states his conclusions as to the law of the case: "The defendant had on December 15, 1909, the right to take the plaintiffs' lots at the contract price of $80,000 subject to the restriction which binds No. 114 South Twelfth street or abandon his purchase thereof and have his payment of $3,000 refunded to him. He had no right under the agreement of sale to insist on a conveyance of the lots at a price lower than the contract price, viz., $80,000." "As the defendant failed within a reasonable time after notice of the plaintiffs' inability to remove the building restriction on No. 114 South Twelfth street to exercise his right to take a conveyance of the lots subject to the said restriction, and make settlement therefor at the stipulated price within the time provided for by the agreement of October 9, 1909, all his rights under that agreement lapsed save the right to require the return of the sum of $3,000, which he had paid to the plaintiffs. In view of the fact that he received and still retains a check for that amount, it cannot be said that the recording of his agreement with the plaintiffs in the office for recording deeds, etc., was a step necessary to enforce or secure his rights thereunder. The recording of that instrument was, under the circumstances, unjust and inequitable, constituting a cloud upon the plaintiffs to the property therein referred to." These conclusions rest upon a construction of the agreement which necessarily limits the vendee's remedies for failure of title, confining him to the alternative in the contract, acceptance of such title as the vendors could make at the stipulated price, or the abandonment of the contract upon the return of the money paid. It is the appellant's contention that the language of the agreement does not import an exclusion of such remedies at law or equity as a

vendee would be entitled to for a breach of a covenant to convey on the part of a vendor. The argument in support of this view strips of all meaning and force the provision in the contract that "should the title be defective in any manner, the vendors will take all necessary steps to have such defect remedied, and should the vendor not be able to do so within a reasonable time the purchaser shall have the option of taking the title as it is, or have the money paid on account refunded." With much apparent confidence it is asserted that this provision in the contract is wholly superfluous, since a vendee always has, in a case where the title proves defective, the option of taking the title as it is or having the money paid on account refunded, and that therefore the provision is entitled to no consideration. The argument very plainly begs the question. We may concede that the provision secures to the vendee no remedy which he would not have had otherwise; but it by no means follows from this that the provision is unmeaning and superfluous. Any such conclusion would necessarily eliminate from all consideration in this connection the vendors, and could rest only on the unwarranted assumption that except as the provision advantages the vendee it is to be disregarded. Any restriction upon a vendee's remedy in case of a vendor's default is manifestly to the advantage of the latter, and if a purpose to so restrict can fairly be derived from the language of the agreement between the parties, such purpose being as legitimate as any other, it is to be given effect. Since it is impossible to derive from the stipulation here any purpose to advantage the vendee, we must either derive from it a purpose to advantage the vendor in some way, or treat the clause as unmeaning and superfluous. We are at liberty to adopt the latter view only in case we find the former unreasonable and repugnant to an evident intent. The parties have themselves inserted each provision in the contract, and accordingly, if possible, the contract must be construed as to give effect to each provision inserted therein: Title Ins. & Trust Co. v. Ellis, 192 Pa. 321.

While this contract does not in express terms limit the vendee to any particular remedy for the vendor's default, yet no other purpose being discoverable from what is expressed, and the language being sufficient to warrant a reasonable inference of an intention to restrict, such construction must prevail, for it is a settled rule of construction that the insertion in a contract of one or more things of a class implies the exclusion of all not expressed, although all would have been implied had none been expressed. In thus interpreting the present contract it is given an effect which defeats the appellant's whole contention. We entirely concur in the conclusions reached by the learned chancellor, that inasmuch as the appellant failed within a reasonable time after notice of the vendor's inability to remove the restriction from the property to be conveyed to exercise his right to take subject to the restriction, and make payment therefor at the stipulated price within the time provided by the contract, all his rights under the contract save the right to have the money paid refunded, lapsed. The view we have thus taken of the case makes it unnecessary to pass upon the question of abatement in price for defect in title. The appellant himself being in default, and his rights under the contract being forfeited, this question does not arise.

The assignments of error are overruled, the appeal is dismissed and the decree is affirmed.